```
           THE SUPERIOR COURT OF THE STATE OF DELAWARE

                 IN AND FOR NEW CASTLE COUNTY


FARMAKEIO OUTSOURCING,        )
LLC,                          )
                              )
          Plaintiff,          )
                              ) C.A. No. N24C-05-327 MAA
           v.                 )
                              )
COALITION FOR RESPONSIBLE     )
COMPOUNDING LLC and SHAUN     )
NOORIAN,                      )
                              )
          Defendants.         )


                     *   *   *   *   *


BEFORE:  HON. MEGHAN A. ADAMS, Judge

                     *   *   *   *   *

         TRANSCRIPT OF DEFENDANTS' MOTION TO DISMISS
              Friday, January 10, 2025
```

```
           ANDREA M. SAATMAN, RPR
          Official Court Stenographer
```

```
 1   APPEARANCES:

 2

 3           BAKER & HOSTETLER, LLP
             Michael E. Neminski, Esquire
 4           Jeffrey J. Lyons, Esquire

 5

             on behalf of the Plaintiff
 6

 7                   ------------

 8

 9           RICHARDS LAYTON & FINGER, LLP
             Katherine L. Mowery, Esquire
10           Gabriela Z. Monasterio, Esquire

11           JACKSON WALKER, LLP
             Michael H. Bernick, Esquire
12

13           on behalf of the Defendants

14

15

16   ALSO PRESENT:

17           Edgar Gonzales, Esquire

18           Travis Reed, Esquire

19

20

21

22

23
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
1    Friday, January 10, 2025
     2:01 p.m.
2    Chambers Virtual Hearing

3                         -  -  -

4              THE COURT:  Good afternoon, everyone.

5              MS. MOWERY:  Good afternoon, Your Honor.

6              MR. NEMINSKI:  Good afternoon, Your Honor.

7              THE COURT:  Would Delaware counsel like to

8    start with introductions, please.

9              MR. NEMINSKI:  Sure, Your Honor.  On behalf

10   of Plaintiff, FarmaKeio, yes, myself, Michael

11   Neminski, and Jeffrey Lyons from BakerHostetler.

12             THE COURT:  Okay.

13             MS. MOWERY:  Good afternoon, Your Honor.

14   Kate Mowery from Richards Layton & Finger on

15   behalf of Defendants Coalition for Responsible

16   Compounding and Shaun Noorian.

17             I have on the line with me this afternoon

18   Gabriela Monasterio from my firm.  And from

19   Jackson Walker, I have Mr. Mike Bernick, who will

20   be presenting on behalf of Defendants with respect

21   to the motion.

22             I also have on the line Edgar Gonzalez and

23   Travis Reed, who are in-house counsel for one of
```

                    ANDREA M. SAATMAN, RPR
                    Official Court Stenographer

```
 1        the members of the Coalition.

 2             THE COURT:  Okay.  Thank you very much.

 3             I'm ready to begin when you are.

 4             Mr. Lyons, I forget, are you Delaware counsel

 5        or pro hac?

 6             MR. LYONS:  Delaware counsel, Your Honor.  Me

 7        and Mike are both Delaware counsel.

 8             THE COURT:  Okay.  I didn't see your name on

 9        the docket.  That's why I was asking.

10             MR. LYONS:  Okay.  Sorry about that.

11             THE COURT:  All right.

12             I'd ready to proceed.

13             MR. BERNICK:  May it please the Count, Your

14        Honor.  My name is Mike Bernick and I'm here on

15        behalf of --

16             THE COURT:  You're just going to need to

17        speak up a little bit.  I can't really hear you.

18             MR. BERNICK:  Absolutely, sure.  My name is

19        Mike Bernick.  I'm here on behalf of the

20        Defendants, the Coalition For Responsible

21        Compounding and Mr. Shaun Noorian.  I'm here from

22        Jackson Walker.

23             Your Honor, when Delaware courts assess
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    motions to dismiss filed on the basis of forum non

2    conveniens, what Delaware courts must assess is

3    whether or not there is an overwhelming hardship

4    and inconvenience to defendant for continuing

5    litigation within Delaware.  And while Delaware

6    courts note that those are rare circumstances,

7    rare cases, this case, Your Honor, is certainly

8    one of those cases.

9         The reason being that, at its core, the crux

10    of this case will boil down to whether or not the

11    Plaintiff, FarmaKeio Compounding, which is a Texas

12    entity, engaged in illegal activity at its Texas

13    facility; namely, producing compounded

14    pharmaceuticals with the use of substances that

15    are banned by the FDA.

16         That is what this case will truly boil down

17    to, whether that actually happened or not, because

18    this defamation case is based on allegations made

19    that FarmaKeio was, in fact, doing that.

20         And one of the defenses that the Coalition

21    and Mr. Noorian will assert is the truth, the

22    truth of those statements.  And the truth is a

23    defense to a defamation claim.

```
 1              And so, looking at the core of this case, the

 2       question will resolve around whether or not

 3       FarmaKeio, a Texas entity, was compounding and

 4       doing things in an illegal manner in Texas.  And

 5       that's a critical determination that can't be

 6       ignored.

 7              The touch point to Delaware in this case, the

 8       sole touch point, is the fact that the Coalition

 9       was formed here.  That's it.  Everything else

10       points outside of Delaware.

11              And the burden, the overwhelming hardship,

12       the inconvenience to the Coalition and Mr. Noorian

13       for litigating this case regarding illegal

14       activity that occurred in Texas is overwhelming.

15              And I'll walk the Court through that, but

16       first of all --

17              THE COURT:  So you need to state it with

18       particularity, so I'm waiting to hear about the

19       particulars.

20              MR. BERNICK:  Absolutely, Your Honor.

21              THE COURT:  Okay.

22              MR. BERNICK:  I'll jump into the Cryo-Maid

23       factors, which are the factors this Court
```

1    considers.  So the first two factors that I want

2    to discuss, which are somewhat related, are the

3    relative ease of access to proof and the

4    availability of compulsory process for witnesses.

5         Your Honor, the issue here is, as I asserted

6    or as I mentioned, the Coalition and Mr. Noorian

7    will be asserting the defense of the truth.  The

8    truth lies at the plant, at the facility in Texas.

9         And while we will be able to depose certain

10   witnesses, we will not be able to compel many of

11   those witnesses to trial.  And I'm not talking

12   about officers or directors of the Plaintiff.  I'm

13   talking about the frontline workers, the people

14   involved in acquiring materials used for

15   compounding, the pharmacists there, the people

16   that were actually firsthand in knowledge,

17   firsthand involved in this process.

18        And those people are the folks that we will

19   not be able to compel to testify live in trial and

20   be assessed and have their credibility assessed in

21   front of a Delaware jury.

22        Now, frankly, Your Honor, as I'm sure Your

23   Honor well knows, the common refrain from jurors

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    after trials is video depos are way too long, they

2    are not interesting, those sorts of things, right?

3         And that is what FarmaKeio is placing the

4    burden on Defendant to have to do, is present

5    multitudes of witnesses via video depo rather than

6    having their credibility assessed in person.

7         And so, essentially, the Defendants are

8    carrying the overwhelming burden of having to try

9    that case at a disadvantage from the start on the

10   question of whether illegal activity occurred in

11   Texas.

12        So the availability of compulsory process of

13   witnesses, that factor falls in favor of

14   Defendants, as does the relative ease of access of

15   proof.

16        THE COURT:  How many people are we talking

17   about?  You have to state with particularity.  Who

18   exactly are you worried about?  How many people

19   are we talking about in terms of witnesses?

20        MR. BERNICK:  So, Your Honor, with this case

21   being where it is, in its infancy, and the

22   Coalition not having a roster of FarmaKeio's

23   employees, all we have right now is, you know,

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    basic job titles of where people would be in the

2    compounding process.

3         So while we're not able to identify specific

4    witnesses by name, we know that those people

5    exist, and those people exist only in Texas, not

6    in Delaware.

7         THE COURT:  How many people?

8         MR. BERNICK:  Your Honor, I don't have an

9    exact number right now, but what I can tell you is

10   would want somebody from the supply line.  We

11   would want somebody from -- we would want a

12   pharmacist.  We would want somebody in the

13   marketing department, the packaging department.

14        Things like folks in those lines that can

15   take the supply chain of the product from the time

16   it comes in the plant as raw materials all the way

17   out.  And that will show how that product was

18   made, how it was used or what was used in it,

19   excuse me, and how it was marketed.

20        Because, as the letters attached to the

21   complaint show, the issue here is that FarmaKeio

22   had kind of a shadow product list that was only

23   accessible by QR code, not accessible to the

1    public, but was still selling illegal compounded

2    pharmaceuticals using illegal peptides using this

3    kind of shadow menu list of the product.  And so,

4    we would need to have witnesses from each step

5    along the product line to show that.

6         So, Your Honor, with the relative ease of

7    access to proof and the available of compulsory

8    process for witnesses favoring Defendants, we

9    submit that, for those two *Cryo-Maid* factors, they

10   favor the Defendant.

11        The third *Cryo-Maid* factor is the possibly to

12   view the premises.  Again, the premises that would

13   be at issue here that is central to the case is in

14   Texas.  It's FarmaKeio's own facility outside of

15   Colleyville, Texas.

16        There's no premises that's at issue in

17   Delaware.  And we believe that the trier of fact

18   could gain some knowledge, gain some

19   understanding, become better suited to understand

20   the facts of this case having an opportunity to

21   view that facility, which is not something that

22   can occur if this case stays in Delaware.

23        Whether the controversy is dependent on state

1      law is the fourth *Cryo—Maid* factor, Your Honor.

2      And, in this case, there's no dispute that this is

3      a tort law case, a garden variety tort law case in

4      that respect.  We're not talking about robust

5      issues of foreign law.

6          But what that actually leans towards is that

7      Texas has a greater interest in how its laws are

8      applied to facilities and businesses in its state

9      and not Delaware here where we'd be trying this

10     case and applying Delaware law regarding a Texas

11     facility potentially or applying Texas law in

12     Delaware.

13         Essentially, Your Honor, any injury occurred

14     in Texas, so we would submit to the Court that

15     Texas law would apply but where Delaware bears no

16     substantial relationship to the law, the alleged

17     injuries, or the underlying facts.

18         THE COURT:  Which case do you believe that

19     you've cited helps you the most on the forum non

20     conveniens grounds?

21         MR. BERNICK:  Sure, Your Honor.  We would

22     submit two cases, Your Honor.  The first would be

23     the *Schmidt v. Washington Newspaper* case.  In that

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    case, the motion to dismiss was granted because

2    the overwhelming majority of the evidence in the

3    case was located in California and none was

4    located in Delaware.

5        If you would like, Your Honor, I can give you

6    a brief recitation of the facts of that case if

7    that would be helpful for you.  So, in that case,

8    there was a newspaper article published about a

9    Navy SEAL engaging in some illegal activity.

10        And the plaintiff's picture was used as the

11    alleged Navy SEAL, when, in fact, he was not the

12    Navy SEAL.  The Navy SEAL -- the plaintiff lived

13    in California.  The publication came out of

14    Washington, D.C., and which was run by a Delaware

15    company.

16        The Court assessed the *Cryo-Maid* factors and

17    really paid a lot of attention to the fact that

18    all of the evidence about any injury to the

19    plaintiff's reputation from being associated with

20    such alleged illegal activity would have been felt

21    in California, the witnesses would have been

22    there, California would have had a greater

23    interest in applying its law to these facts.

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1          So we submit the *Schmidt* case on that front,

2     Your Honor, and we will note that the *Schmidt* case

3     applies a lower standard than the overwhelming

4     hardship and inconvenience standard for the forum

5     non conveniens analysis, but at the same time

6     still instructive on assessing these issues.  And

7     we believe when assessing these issues through

8     that lens, we overcome the overwhelming hardship

9     and inconvenience there.

10         The second case, Your Honor, is *Fenix v.*

11    *Scission,* which is a 1970 case.  That case was

12    regarding a property dispute out of the state of

13    Washington and against the Delaware company.

14         And the key holding in that case was that the

15    case was going to be more expeditiously and

16    inexpensively tried in Washington because the

17    issue, the premises, the location at issue was in

18    Washington.  The proof was there and whether or

19    not the facility in Washington had been properly

20    constructed.

21         And so, the access of proof burden on the

22    defendants, it was not going to be able to take

23    third-party witnesses or party witnesses from the

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
 1        plaintiff and bring them into the Delaware court

 2        without great expense, great inconvenience, and

 3        hardship to putting on its case at trial because

 4        it could not compel all of the witnesses that it

 5        would like to.

 6             So we would submit those two cases support

 7        our position, Your Honor.

 8             THE COURT:  Okay.

 9             MR. BERNICK:  Quickly, Your Honor, moving on,

10        with the sole touch point to Delaware in this case

11        being the formation of the Coalition in Delaware

12        which is headquartered in Texas, there is an

13        attenuated relationship between the underlying

14        facts in this case and Delaware.  There's only one

15        touch point.

16             Everything else focuses outside of Delaware.

17        Everything else really points to Texas.  And

18        everything that the Coalition and Mr. Noorian

19        would be needing to prove its defense of the truth

20        is focused in Texas.

21             And the issues of bringing in that proof,

22        those witnesses, which are not officers or

23        directors or corporate representatives of
```

```
1        FarmaKeio to Delaware, would be extremely

2        difficult, if not impossible.

3            THE COURT:  How many cases do you think that

4        are filed in Delaware actually have to do with

5        anything happening in this state?

6            MR. BERNICK:  I believe that there are -- I'm

7        sorry.  Can I hear the question one more time,

8        Your Honor?

9            THE COURT:  Sure.  How many cases that are

10       filed in Delaware because a company is a Delaware

11       cooperation actually have anything to do with

12       anything that happened in this state?

13           MR. BERNICK:  Your Honor, I will concede that

14       there are some.  And, in a lot of those cases --

15       you know, as we all know, Delaware is a hotbed for

16       corporate formation and corporate governance

17       issues.

18           And there are corporate governance cases that

19       talk about the importance of the defendant being a

20       Delaware entity and Delaware's interest in making

21       sure that its Delaware-formed entities are being

22       administered and governed in accordance with

23       Delaware standards.
```

```
 1              This is not one of those cases.  The

 2       formation of the Coalition in Delaware has nothing

 3       to do with whether or not there's any truth or

 4       falsity to the statements made about the claim.

 5       So that's where I would separate those cases, Your

 6       Honor.

 7              Moving on, Your Honor, the Coalition and

 8       Mr. Noorian, you know, are here because the

 9       Coalition believes in responsible compounding.  As

10       part of its mission, it self-regulates in the

11       industry.  It sends the state boards the pharmacy

12       complaints that it believes are true.  And that's

13       why we're here.

14              And the proof of that truth is not located in

15       Delaware, and it would exercise an extreme

16       hardship, an overwhelming hardship, to the

17       Coalition and Mr. Noorian if it had to try this

18       case with one arm tied behind their back with only

19       depositions at trial and not allow the jurors to

20       really assess the credibility of the FarmaKeio

21       witnesses on whether they are engaging in illegal

22       activity.

23              So, with that, Your Honor, I will go onto the
```

```
1        sixth factor, which is other practical problems

2        that will make trial easy, expeditious, and

3        inexpensive.  As mentioned, all of the witnesses

4        are in Texas for the Plaintiff.  All of the

5        Coalition is in Texas.

6            There's one person associated with the

7        Coalition in New Jersey who would come down to

8        Texas.  This whole trial would be more easy and

9        expeditious if it was filed in Texas rather than

10       being filed in Delaware instead of hauling

11       everyone up to Delaware to try the case.

12           So, for those reasons, Your Honor, we submit

13       that the overwhelming hardship and inconvenience

14       favors this case being dismissed from Delaware and

15       that the Court find that this is a rare case in

16       which the forum non conveniens should be granted.

17           THE COURT:  Thank you.

18           MR. NEMINSKI:  May I proceed, Your Honor?

19           THE COURT:  Yes.  Thank you.

20           MR. NEMINSKI:  Thank you, Your Honor.  I'd

21       like to respond to a couple of points made by the

22       opposing counsel for the Defendants, but first,

23       just to set the stage as to what I'd like to
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    discuss and focus specifically on, the *Cryo-Maid*

2    factors.

3        As my opposing counsel noted, the six factors

4    that'll be used to demonstrate the overwhelming

5    hardship that Defendants need to show in order to

6    have this case dismissed are the relative ease of

7    access of proof, the availability of compulsory

8    process for the witnesses, the possibility of

9    viewing the premises, whether Delaware law

10   applies, the pendency or non-pendency of similar

11   actions in another jurisdiction, and other

12   practical problems with litigating in Delaware.

13       If Your Honor would permit me a little bit of

14   flexibility, I'd like to talk about the pendency

15   or non-pendency of similar actions in another

16   jurisdiction factor first.

17       THE COURT:  Sure.

18       MR. NEMINSKI:  It's a factor that was really

19   not touched on by my opposing counsel, and that's

20   because I think this factor is going to be

21   influential in the Court's analysis.

22       The Delaware Supreme Court has held that in

23   the absence of another pending litigation, it's a

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
 1        significant factor that may be overcome only in
 2        the most compelling circumstances.  And that's
 3        Berger v. Intelident, 906 A.2d 137 through 138.
 4             Other Superior Court decisions have stressed
 5        that this factor is important, if not a
 6        controlling consideration, and when there is no
 7        other pending litigation, if this factor is not
 8        dispositive, it weighs heavily against dismissal.
 9        And that's the In Re: Asbestos Litigation at 929
10        A.2d 387.
11             Defendants in their briefing try to minimize
12        this factor by pointing to the fact that the
13        statute of limitations on Plaintiff's claims has
14        not yet expired and that Plaintiffs can easily
15        refile in Texas.
16             That's a little bit of a mischaracterization
17        as to the burden Plaintiff will suffer if this
18        case is dismissed.  Plaintiff, of course, will
19        suffer some delay if it has to refile in Texas and
20        will incur additional expense if having to refile
21        in Texas.
22             THE COURT:  I'm not aware that the statute of
23        limitations, whether it's going to run or not, is
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    really a consideration in this analysis.

2         MR. NEMINSKI:  I think Defendants' point,

3    Your Honor, is that we can just ultimately refile

4    relatively quickly in Texas, but other Superior

5    Court rulings have noted that even at early stages

6    of this litigation, the potential burden and

7    expense of having to refile in another state is

8    enough to weigh in favor of keeping the case in

9    Delaware.

10         So, therefore, Your Honor, I would submit

11    that this factor weighs heavily in favor of

12    keeping the case in Delaware, and therefore,

13    against dismissal.

14         Moving to the relative ease of access of

15    proof and the availability of the compulsory

16    process for witnesses, I'd like to discuss these

17    factors together as well.

18         As an initial matter, Your Honor, Defendants'

19    briefing and argument seems to compare the two

20    forums and try to point to which forum is the most

21    convenient, but that's not necessarily the

22    standard.

23         The Defendants need to show an overwhelming

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    hardship for litigating in Delaware, and they

2    cannot show that hardship.

3        They point to a number of documents that may

4    be located in Texas, but modern methods of

5    technology and document production make it

6    relatively easy to collect documents and produce

7    them to another side even from outside of

8    Delaware.

9        The only other witnesses that the Defendants

10   have noted, Anthony Connors, he's a New Jersey

11   resident, he's not subject to compulsory process

12   in Texas.  Shaun Noorian, he's a Defendant in this

13   action.  He's subject to the jurisdiction of

14   Delaware.

15       The defense counsel in his presentation

16   talked a lot about FarmaKeio's employees.  We

17   would, of course -- we understand that by filing

18   in Delaware, we would be cooperative with the

19   Court and have those employees available for

20   testimony, if needed.

21       As to the potential Coalition's employees,

22   those witnesses are controlled by the Defendant,

23   and at least one Delaware case has found that

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
 1        defendant's employees who are paid by and,

 2        therefore, controlled by the defendant would, of

 3        course, show up at a defendant's request; and

 4        therefore, does not weigh in favor of dismissal.

 5             And also, Your Honor, I would submit that the

 6        Defendants are overstating their burden for this

 7        factor.  The parties can take depositions and use

 8        deposition testimony at trial.  There are several

 9        decisions by Delaware courts holding that this is

10        an adequate substitute for live testimony.

11             And, if needed, Your Honor, the Court can

12        issue a commission to allow the party to seek

13        relief against a witness in the appropriate court

14        from out of state.  This would be an easy way to

15        obtain testimony for the case, if needed.

16             Moving to the possibility of viewing the

17        premises, Defendants' opening and reply brief and

18        their argument today failed to demonstrate why the

19        inspection of the premises is necessary.

20             Whether the Plaintiff is engaging in illegal

21        compounding of drugs is something that can be

22        shown through document production and testimony of

23        witnesses.  They haven't explained why it's needed
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    for their defense, and I would argue it doesn't

2    demonstrate overwhelming hardship.

3        But putting that aside, Your Honor, an

4    inspection of the premises sort of by Defendants'

5    counsel, by Plaintiff's counsel will surely result

6    in a number of videos and photos that can be

7    submitted to the trier of fact, that can be

8    reviewed by the trier of fact, and ultimately,

9    don't demonstrate overwhelming hardship.

10        A live view of the premises in this day and

11    age is ultimately not something that has

12    significant weight in this analysis, especially in

13    the day and age of Google Maps and other

14    technology that can assist with this process.

15        Turning to the factor of whether this

16    controversy is dependent on the application of

17    Delaware law, the factor is ultimately important

18    for the Court's consideration when the case turns

19    on an unsettled issue of foreign law.  However,

20    when the case involves settled foreign law, this

21    factor does not tend to weigh heavily in favor of

22    the Defendants' motion.

23        This is a case involving tort law.  Plaintiff

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    hasn't done the analysis on the potential choice

2    of law, but even if Texas law applies, Delaware

3    courts are fully equipped to determine Texas law,

4    and courts have ultimately found that this factor

5    does not weigh in favor of dismissal when you're

6    determining settled law from other states in the

7    United States.

8        It's not a case like *Hall* or *Martinez v.*

9    *Dupont,* which is 86 A.3d 1102, which was an issue

10   of first impression under Argentine law.  This is

11   a fairly well-settled issue that Delaware courts

12   are fairly equipped to determine, and therefore,

13   it does not weigh in favor of dismissal.

14       Finally, Your Honor, turning to other

15   practical problems, the Defendants ultimately

16   don't mention any.  They simply recycle their

17   arguments related to other factors.  Their opening

18   brief, reply brief, and arguments simply just

19   recite the same conclusions.  They don't identify

20   anything new.

21       What the Defendants failed to mention that is

22   ultimately relevant to this factor is Delaware's

23   interest in regulating the conduct of entities

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    organized under its laws and the fiduciaries who

2    serve those entities.  I would argue, Your Honor,

3    that that weighs in favor of keeping the case in

4    Delaware, as do many of the other *Cryo-Maid*

5    factors.

6         Briefly, Your Honor, I just want to touch on

7    the two cases my opposing counsel noted in his

8    presentation.  The *Schmidt v. Washington Newspaper*

9    case is actually a case cited by the Plaintiff in

10   Plaintiff's opposition brief.  It's not a case

11   cited by Defendants in their briefing.

12        And that case involved a case where there was

13   a prior pending litigation in another case.  It's

14   not this case.  It's easily distinguishable.

15        And, Your Honor, my opposing counsel brought

16   up -- and I don't have the note down -- I believe

17   a *Fenix* case.  I don't believe that's cited

18   anywhere in the briefing.  It's not a case that

19   I'm familiar with at the moment, and so, I'm not

20   sure of its relevance here in the analysis.

21        THE COURT:  I couldn't find it either, but

22   it's from the 1970s, and I think technology has

23   changed a little bit since then.

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
 1              MR. NEMINSKI:  Fair enough, Your Honor.  But,
 2        with that said, I would submit that this is not
 3        one of the rare and extraordinary cases that
 4        require dismissal, especially when there's no
 5        other pending action.
 6              And Plaintiff choose to file its complaint in
 7        Delaware, so I would submit, Your Honor, and
 8        Plaintiff submits that the motion be denied.  But
 9        with that said, if Your Honor has any questions,
10        I'd be happy to answer them.  If not, I'll reserve
11        the rest of my time.
12              THE COURT:  No, thank you.  I appreciate it.
13              MR. NEMINSKI:  Thank you, Your Honor.  I
14        appreciate it.
15              MR. BERNICK:  Your Honor, just a couple of
16        points on rebuttal?
17              THE COURT:  Sure.
18              MR. BERNICK:  Your Honor, just to clarify,
19        the Fenix case we mentioned on Page 5 of our reply
20        brief.
21              THE COURT:  Okay.  And what's the cite for
22        that one?
23              MR. BERNICK:  Sure.  It's Fenix v. Scission,
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1    *Inc. v. Underground Storage, Inc.,* 262 A.2d 260

2    and a pincite to 262, Delaware Superior Court,

3    1970.

4         THE COURT:  All right.

5         MR. BERNICK:  Okay.  Your Honor, to address a

6    couple points in response from Plaintiff's

7    counsel, as this Court has noted, the ability to

8    transmit electronic evidence, the ability to move

9    documents electronically, while that may lessen

10   the burden of litigating elsewhere, that does not

11   render the first *Cryo-Maid* factor meaningless.

12        It's still important that there's a relative

13   ease of access to proof for the Defendant.  And

14   just because we can send electronic documents back

15   and forth does not negate this factor wholesale.

16        Also, because this Court has recognized video

17   depositions and teleconference, they can be

18   alternatives; however, there is no substitute for

19   in-person testimony, and the availability of these

20   methodologies is not dispositive of the first

21   *Cryo-Maid* factor or the second *Cryo-Maid* factor.

22        And so, we would submit to the Court that

23   we're focusing on the first two factors primarily,

```
1        Your Honor, of the Cryo-Maid analysis, the

2        relative ease of access to proof, the availability

3        of compulsory process of witnesses and in addition

4        to the other factors we cited earlier.

5            But the real factor here is that we are

6        trying to prove the truth of the allegations made

7        about this Texas facility.  What opposing counsel

8        just said about making witnesses available and

9        working with the court, we are still subject to

10       only bringing witnesses to trial that Plaintiffs

11       allow to come to trial.

12           And that's going to put us with one arm tied

13       behind our back as far as bringing in witnesses

14       and having the jurors in this case assess the

15       credibility of these witnesses about whether

16       illegal activity actually transpired in Texas and

17       assessing that credibility live in person.

18           And for these reasons, Your Honor, we submit

19       that the Cryo-Maid factors favor in finding an

20       overwhelming hardship and inconvenience to the

21       Defendants, and that this case should be

22       dismissed.

23           THE COURT:  Thank you.  I appreciate it.
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

1          Thank you, everybody, for your argument

2     today.  If you want to place yourselves on mute,

3     I'm prepared to issue my decision.

4          As you all know, in April of this year, the

5     Coalition filed a complaint against FarmaKeio with

6     the Colorado State Board of Pharmacy.  The

7     complaint accuses FarmaKeio of compounding certain

8     medicines in violation of federal law.

9          The Coalition also filed complaints with the

10    relevant state boards in Wisconsin, Kentucky, and

11    Missouri.  FarmaKeio alleges that these complaints

12    contain false and defamatory statements.

13         The action that was filed here in Delaware

14    was the first-filed action between the parties,

15    and there's no other pending lawsuits.  The

16    Coalition filed in Texas for a nonprofit entity

17    status on July 10, 2024.

18         The Defendants filed the motion to dismiss in

19    August of 2024, and the matter has now been fully

20    briefed since the end of October.  The Defendants

21    have filed a motion to dismiss only on forum non

22    conveniens grounds.  This is the first-filed case

23    between the parties and there is no other pending

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
 1      litigation.

 2              As such, the Cryo-Maid test applies, and the

 3      Defendants will need to show via the Cryo-Maid

 4      factors that litigating in Delaware will create an

 5      overwhelming burden or overwhelming hardship.

 6              I am going to go through all the factors

 7      here.  First I'm going to start off with the

 8      Plaintiffs' state of incorporation and the

 9      Defendants' purported lack of connection to

10      Delaware tied in with the fact that the Defendant

11      is a Delaware corporation.

12              The Defendants argue that Plaintiff's choice

13      of forum should not be given as much weight

14      because the Plaintiff is a Texas corporation, and

15      the only connection this case has to Delaware is

16      the Coalition's place of incorporation.

17              Our Supreme Court back in 2001 has rejected

18      this argument in Warburg, Pincus Ventures, L.P. v.

19      Schrapper, 774 A.2d 264, like I said, from 2001.

20      And I'm just going to read a quote from that case.

21      And this is from Page 999.

22              "Our Supreme Court has said because the

23      defendant has the burden to demonstrate
```

```
1      overwhelming hardship from litigating a

2      first-filed case in Delaware, this court has

3      previously held that whether an alternative forum

4      would be more convenient for the litigation or

5      perhaps a better location is irrelevant.

6          And the trial court is not permitted to

7      compare Delaware, the Plaintiff's chosen forum,

8      with an alternate forum and decide which is the

9      more appropriate location for the dispute to

10     proceed."

11         I'll also notice that the Supreme Court goes

12     on to say that "previously, the Supreme Court has

13     rejected the argument that some lesser standard

14     applies where the plaintiff is not a Delaware

15     citizen and where the defendant's only connection

16     to Delaware is its status as a Delaware business

17     entity."

18         I'm citing a previous -- I'm sorry.  I'm

19     citing the Candlewood case which is citing

20     Warburg.  I apologize.  Citing Warburg, the Court

21     rejected that argument.

22         So the first quote I had -- I apologize -- is

23     from Candlewood Timber Group v. Pan American
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
 1        Energy, 859 A.2d 989, from the Delaware Supreme

 2        Court in 2004.

 3             Moving on to the different factors:  Access

 4        to proof.  Defendants' argument focuses on

 5        convenience, not overwhelming burden.  The

 6        Defendants have not stated that obtaining any

 7        evidence would impose a burden while litigating in

 8        Delaware, merely that most evidence is in Texas.

 9             The Defendants, as I tried to get at earlier

10        in the argument today, have not discussed any

11        evidence with particularity as required.

12        Therefore, I don't believe that this factor weighs

13        in favor.

14             The second, availability of compulsory

15        process.  Again, I don't believe that the

16        Defendants have provided enough here, as these

17        parties are aware, especially in the age of Zoom

18        and other technology.

19             I tried to press the Defendants' counsel

20        about which witnesses exactly may be unavailable,

21        and the best that they can do is provide some job

22        titles of people that they would like to depose

23        potentially and maybe bring to trial, but that's
```

1    not enough to satisfy the overwhelming hardship

2    standard.

3        I also find that the view of the premises is

4    not really relevant.  The parties, which appear to

5    both have some connection to Texas, can go to

6    Texas, take pictures or videos, and show them in

7    front of the jury; which, by the way, is something

8    that would happen even if the evidence was located

9    here.

10        It's unlikely that any jury here in Delaware

11    would be going out to some location in Delaware to

12    view the premises, even if it happened here.  So

13    pictures and videos are typically how this works,

14    in any event.

15        Again, whether the controversy is dependent

16    on the application of Delaware law, even assuming

17    that Texas law applies, this factor adds little,

18    although some, weight in favor of dismissal.

19        The pendency of other litigations.  I'll note

20    that the *Schmidt v. Washington Newspaper* case,

21    2019 4785560 from our court from September of

22    2019, in that case, there was another action that

23    had been filed in the United States District Court

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
 1          for the Southern District of Florida almost a year

 2          before the Delaware action had been filed.

 3              So those circumstances are completely

 4          different than what we have here, and I don't find

 5          that that case really moves the needle in any

 6          direction for the Defendants' argument.

 7              Other practical issues, as counsel has

 8          pointed out for the Plaintiffs and as discussed

 9          here today, evidence can be transported

10          electronically, people can easily travel from

11          Texas to Delaware.

12              We can do things now in court that maybe

13          weren't even available or offered a couple years

14          ago such as testifying over Zoom even in a jury

15          trial setting.  So I don't believe that that

16          factor weighs in favor of dismissal as well.

17              Therefore, I find that I am going to deny the

18          motion to dismiss because the Defendants have not

19          met their burden of satisfying the overwhelming

20          hardship standard.

21              Does anybody have any questions?

22              MR. NEMINSKI:  Nothing from Plaintiff, Your

23          Honor.
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
1            THE COURT:  Okay.

2        I know my friends from Delaware know that our

3   courts, especially those of us who are on CCLD,

4   are also handling a lot of Chancery matters right

5   now, and my trial schedule is booked up probably

6   for the next year and a half.  Every week, I have

7   either a Chancery or a CCLD trial.

8        There are some holes in my schedule, but I

9   would suggest that you all perhaps just reach out

10  to the court to get a trial date in whatever time

11  frame you think you may be able to do it, and we

12  will work with you as best as we can to try to fit

13  you in.

14       I typically don't schedule CCLD and Chancery

15  trials -- I typically don't double book them

16  because whenever I think a case is going to

17  settle, it doesn't, and then, inevitably, two

18  cases will be tried at the same time.

19       But as Delaware counsel knows, CCLD cases

20  take priority over every other case on my docket

21  except for a first-degree murder trial.  So I do

22  schedule trials throughout the year even when I'm

23  in my criminal rotation.
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
1              So whatever quarter in whatever year that you

2       are looking at, just reach out to Lauren, my

3       assistant, and she can help you out with the

4       schedule.

5              And then after you get a trial date, I would

6       just expect for you all to work together to put

7       together a schedule.  We do have some samples in

8       my preferences, and I know both Delaware counsel

9       here has appeared in front of me before and are

10      familiar with my preferences in terms of the

11      scheduling orders.

12             So with that being said, I hope everyone has

13      a great weekend.  And thank you again for the

14      arguments today.  I always appreciate hearing from

15      such great counsel.

16             Have a good day.

17             MR. NEMINSKI:  Thank you, Your Honor.

18             MR. BERNICK:  Thank you, Your Honor.

19             MR. LYONS:  Thank you, Your Honor.

20             (This matter concludes at 2:37 p.m.)

21

22

23
```

ANDREA M. SAATMAN, RPR
Official Court Stenographer

```
1            CERTIFICATION OF STENOGRAPHER

2

3        I, Andrea Saatman, RPR, Official Court

4    Stenographer of the Superior Court, New Castle

5    County, State of Delaware, do hereby certify that

6    the foregoing is an accurate transcript of the

7    testimony adduced and proceedings had, as reported

8    by me, in the Superior Court of the State of

9    Delaware in and for New Castle County, in the case

10    herein stated, as the same remains of record in

11    the Office of the Prothonotary of New Castle

12    County at Wilmington, Delaware.

13        This certification shall be considered null

14    and void if this transcript is disassembled or

15    disseminated in any manner by any party without

16    express and written authorization of the signatory

17    below.

18        WITNESS, my hand, this 8th day of February,

19    A.D., 2025.

20

21                    /s/ Andrea M. Saatman
                      Andrea M. Saatman, RPR
22                    Official Court Stenographer

23
```